**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS GUY THOMASSON,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL NO. 3:CV-11-2392** |
| **v.** : | |
| : | **(Judge Caputo)** |
| **J. KOEHN,** *et al.*, : | |
| : | |
| **Defendants** : | |

**M E M O R A N D U M**

I.  **Introduction**

On December 29, 2011, Plaintiff, Thomas Guy Thomasson, an inmate confined at the United States Penitentiary Canaan (USP Canaan), Waymart, Pennsylvania, filed this *Bivens* action[1] claiming that he was placed in the Special Housing Unit (SHU) in retaliation of his First Amendment rights, subjected to excessive force, the object of racial slurs, and denied medical attention by the Defendants.[2]  (Doc. 1, Compl.)  Presently before the Court is Defendants James

---

[1] In *Bivens*, the Supreme Court held that a plaintiff may obtain damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights.  *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971). *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012).

[2] For the convenience of the reader of this document in electronic format, hyperlinks to authority cited have been inserted.  No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

Koehn, Allen Farley, William Sevison, Carl Michko, J. Schwartz, R. Burns, and B. Alvaro's Motion to Dismiss and/or Summary Judgment. (Doc. 27, Mot. to Dismiss.) The Defendants assert that all of Mr. Thomasson's claims, except for his excessive use of force claim against Allan Farley, are subject to dismissal due to his failure to exhaust his available administrative remedies. With respect to the use of force claim against Allen Farley, Defendants contend given the totality of the situation the actions of Allan Farley do not rise to the level of a constitutional violation. Even though Mr. Thomasson was granted an enlargement of time to file a brief in opposition to Defendants' motion, he failed to do so or request additional time to respond.

For the reasons set forth below, the Defendants' unopposed motion will be granted.

## II. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive

law. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole,* 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 2510, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

At summary judgment the moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

### III. Undisputed Facts

Along with their motion of summary judgment and brief, Defendants filed a Statement of Material Facts and supporting evidentiary materials. (Doc. 33). Because Mr. Thomasson failed to file a Statement of Material Facts in response to Defendants' submission, the facts as set forth in Defendants' statement will be deemed admitted pursuant to M.D. Pa. Local Rule 56.1. *See Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (District Court entitled to deem Defendants' statement of facts as admitted due to Plaintiff's failure to file a counter-statement of material facts). The undisputed facts are as follows.

#### A. December 28, 2010 SHU Incident

Thomas Guy Thomasson was committed to the Bureau of Prisons (BOP) on October 29, 2010, for a probation violation. (Doc. 33, Defs.' Statement of Material Facts, ¶ 1.) On December 6, 2010, he was designated to USP Canaan. (*Id.* ¶ 3.) On December 23, 2010, he was assigned to USP Canaan's Special Housing Unit (SHU) and placed in Administrative Detention pending an initial classification and a Captain's review. (*Id.* ¶ 13). At all times relevant to this action, Allan Farley was employed in the capacity of an Acting Unit Manager at USP Canaan. (*Id.* ¶ 4.)

On December 28, 2010, at approximately 9:50 a.m., Unit Manager Allen Farley and Case Manager Jamey Koehn met with Mr. Thomasson in the Disciplinary Hearing Officer's (DHO) Office of the SHU to conduct his initial classification. (*Id.* ¶ 14.) During the course of the meeting, upon learning of the points assessed toward his case, Mr. Thomasson became increasingly agitated and verbally abusive,

suddenly jumped up from his chair, and attempted to leave the room unescorted.[3] (*Id.* ¶ 15, ¶ 24, ¶ 32 and ¶¶ 64-65.) He was given a direct order by Case Manager Koehn to sit down. (*Id*. ¶ 32.) When Mr. Thomasson continued toward the door in an attempt to leave the DHO's office, Unit Manager Farley placed his hands on Mr. Thomasson's right shoulder to attempt to stop him from leaving. (*Id.* ¶ 16, ¶ 32 and ¶ 65.) Mr. Thomasson immediately turned and lunged at Defendant Farley in an aggressive manner. (*Id.* ¶ 17 and ¶ 32.) Defendant Farley then placed Mr. Thomasson on the floor to gain control of him while another staff member called for assistance. (*Id.* ¶¶ 18-19 and ¶ 32.)

The Defendants Alvaro, Burns, Schwartz and Sevison responded to the call and assisted placing Mr. Thomasson in leg restraints, after which, he was escorted to a holding cell without further incident. (*Id.* ¶ 20, ¶¶ 33-34 and ¶¶ 36-37.) At approximately 10:59 a.m., Mr. Thomasson was seen by Defendant Michko, a paramedic, for an injury assessment. (*Id*. ¶¶ 71-80.) Defendant Michko assessed Mr. Thomasson's complaints of right ankle pain, right head pain, right chest pain, and right wrist pain. (*Id*. ¶¶ 72-74.) According to Defendant Michko, Mr. Thomasson had the following injuries: an abrasion in the right temporal area; a hematoma with tenderness and swelling to the right occiput with no deformity or depression; tenderness to palpation on the right chest with no crepitus of paradoxical movement and clear lungs with equal expansion; an abrasion to the dorsal aspect of his left wrist; and swelling and tenderness of the right ankle with no

---

[3] SHU inmates are not permitted to move within the SHU without a staff escort. (*Id*. ¶ 8.)

crepitus or deformity. (*Id*. ¶ 75.) Defendant Michka ordered x-rays of Mr. Thomasson's right ankle. (*Id*. ¶ 77.) He also cleansed the wound to Mr. Thomasson's right temporal area with hydrogen peroxide and applied a large Band-Aid. (*Id*. ¶ 78.) Mr. Thomasson was counseled regarding his access to care.[4] (*Id*. 80.)

### B. Disciplinary Proceedings Related to December 28, 2010 SHU Incident

On December 28, 2010, Defendant Farley issued Mr. Thomasson Incident Report No. 2105781 for "assaulting any person (minor assault attempted)". (*Id.* ¶ 25.) A DHO hearing concerning Incident Report No. 2105781 was conducted on January 6, 2011. (*Id.* ¶ 26.) On January 6, 2011, the DHO found Mr. Thomasson guilty of Attempted Assault of Any Person, a Code 224A violation:

> based on the greater weight to the evidence, that on December 28, 2010, at 9:50 a.m., during initial classification in the Special Housing Unit (SHU), THOMASSON jumped from his chair and attempted to leave the room unescorted, the reporting staff member placed his hands on his right shoulder in an attempt to prevent him from leaving unescorted, at which time he turned and lunged at him in an aggressive manner.

(*Id.* ¶ 38.) A copy of the DHO's January 31, 2011, report was provided to Mr. Thomasson the same day. (*Id.* ¶ 43.) Mr. Thomasson did not appeal the DHO's findings. (*Id.* ¶ 44.)

---

[4] Although Defendants provide additional facts related to the BOP's continued care and treatment of Mr. Thomasson's ankle injury, the Court will not recite those facts here as they are immaterial to our resolution of Mr. Thomasson's Eighth Amendment medical claim, *infra*, which will be dismissed due to his failure to exhaust his administrative remedies as to this claim.

### C. Exhaustion of Administrative Remedies

Federal inmates may challenge any aspect of their confinement by using the BOP's Administrative Remedy procedure. (*Id.* ¶ 46, citing 28 C.F.R. § 542.10(a)). The first tier of the administrative remedy program is to present the issue to the staff for an informal resolution attempt. (*Id.* ¶ 47, citing See 28 C.F.R. § 542.13). If that does not resolve the issue, the inmate must submit a formal request for administrative relief to the Warden. (*Id.* ¶ 48, citing 28 C.F.R. § 542.14). An inmate who is not satisfied with the Warden's response may submit an appeal to the appropriate Regional Director. (*Id.* ¶ 49, citing 28 C.F.R. § 542.15). DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located. (*Id.* ¶ 50, citing 28 C.F.R. §542.14(c)(2)). The final step in the administrative remedy process is an appeal to the General Counsel (*Id*. ¶ 51, citing 28 C.F.R. § 542.15). No administrative appeal is considered fully exhausted until it has been considered by the General Counsel's Office. (*Id.* ¶ 52, citing 28 C.F.R. § 542.15).

Mr. Thomasson filed only four administrative remedies throughout his BOP incarceration. (*Id*. ¶ 54.) All four administrative remedies pertain exclusively to his claim that Defendant Farley used excessive force against him on December 28, 2010. (*Id*. ¶¶ 54-60.) Mr. Thomasson filed Administrative Remedy 623337-F1 at USP Canaan on January 20, 2011, which was rejected and returned to him the following day. (*Id*. ¶ 55.) Mr. Thomasson resubmitted the Administrative Remedy 623337-F2 on January 28, 2011, which stated:

> I am submitting this BP-9 as an appeal of the Informal Resolution process, for there is no resolution that can be reached, informally, that can bring closure to this matter. I had been assaulted by UNIT MANAGER FARLEY, while already restrained in hand-cuffs, that resulted in injuries, including a broken right ankle. Thus, I wish to be compensated for the injuries and pain I suffered. Conflict of interest. Adversely affected, for this complaint against a member of my unit team. COMPENSATION FOR INJURIES. $100,000.

(*Id*. ¶ 56.) Warden Holt (non-defendant) responded to the Administrative Remedy, advising Mr. Thomasson that his allegations are taken seriously and would be investigated but, due to privacy rights of staff members, the results of the investigation would not be revealed to him. (*Id*. ¶ 57.) On February 16, 2011, Mr. Thomasson filed Administrative Remedy 62337-R1 at the BOP's Northeastern Regional Office challenging the Warden's response. (*Id*. ¶ 58.) The Regional Director responded to the appeal on March 17, 2011, informing Mr. Thomasson that a thorough investigation would be conducted into his assault allegations, that he received adequate medical care following the incident, and that any relief he seeks with regard to his injury would be addressed within the context of the federal tort claim he filed with the Regional Counsel's office on February 16, 2011.[5] (*Id*. at ¶ 59; Doc. 33-2, Exs. in Supp. Defs.' Mot. to Dismiss, ECF p. 15.) Mr. Thomasson filed a Central Office Administrative Remedy Appeal on April 11, 2011, again alleging he incurred a broken right ankle after he was assaulted by Unit Manager Farley in the SHU. (Doc. 33, DSMF ¶ 60.) The BOP's Administrator for National Appeals denied his appeal. (*Id*. ¶ 61.)

---

[5] Mr. Thomasson's present action does not include a Federal Tort Claim Act claim.

### D. Investigation into Allegations of Unit Manager Farley's Misconduct on December 28, 2010[6]

USP Canaan's Warden requested the BOP's Special Investigations Department investigate Mr. Thomasson's allegations that Unit Manager Farley assaulted him on December 28, 2010. (*Id*. ¶ 62.) The internal investigation revealed insufficient evidence that Defendant Farley physically abused Mr. Thomasson. (*Id*. ¶ 63).

In connection with the investigation, Defendant Farley submitted a sworn affidavit. Defendant Farley states that Mr. Thomasson became agitated during his classification meeting, jumped from his chair, and attempted to leave the room unescorted. (*Id*. ¶¶ 64-65.) He placed his hands on Mr. Thomasson's right shoulder after he refused an order to sit down. (*Id*. ¶ 65.) When he attempted to leave the room, he placed Mr. Thomasson on the ground to gain control, and that within seconds, SHU staff responded, applied leg restraints and escorted him from the room. (*Id*.)

Unit Manager Farley denies instructing responding staff members to twist Mr. Thomasson's legs or ankles, or to otherwise use inappropriate force against Mr. Thommasson. (*Id.* ¶ 21.) Defendant Farley denies provoking Mr. Thomasson to leave the room unescorted, or to lunge at him. (*Id.* ¶ 23.) Defendant Farley placed

---

[6] The Court notes that Defendants' Index of Exhibits (Doc. 33-1) in support of their motion for summary judgment identifies Ex.2 Attach. R as a "Use of Force Video referenced in Forms 583 and 586". Upon a thorough review of the record before the Court, it was discovered that this exhibit was never submitted to the Court. This oversight, however, is of no import to our resolution of Defendants' motion as Defendants do not rely upon the video in support of any of their unopposed statements of material facts.

-9-

his hands on Mr. Thomasson's right shoulder in a manner that was intended to deter him from continuing his movement to the SHU range. (*Id.* ¶ 22.) Defendant Farley states he did not assault Mr. Thomasson. (*Id*. ¶ 64.)

The Special Investigations Department's findings were consistent with Defendant Farley's statements. (*Id*. ¶ 66.) Warden Holt determined that "[t]he action taken with respect to the use of force and/or restraints were reasonable and appropriate and have been reviewed with the staff involved." (*Id*. ¶ 69.)

## IV. Discussion

### A. Mr. Thomasson's Failure to Exhaust his Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires that an inmate exhaust all available administrative remedies before he may maintain a suit in federal court:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility under such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," including *Bivens* suits by federal prisoners. *Porter v. Nussle*, 543 U.S. 516, 523, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). Under the PLRA, a prisoner must properly exhaust all available administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006). "Proper

exhaustion demands compliance with the agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91, 126 S.Ct. at 2386; *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). Further, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). The Supreme Court has clearly stated that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007).

A prisoner is not required to allege that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. (*Id.*) As such, it must be plead and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

In their motion, Defendants present the affirmative defense that they are entitled to judgment as a matter of law with respect to all claims against all defendants, except Mr. Thomasson's Eighth Amendment excessive use of force claim against Unit Manager Farley, due to his failure to exhaust his available administrative remedies as to these claims. Specifically, Defendants state that Mr. Thomasson has not exhausted his administrative remedies concerning the following claims asserted in the Complaint: (1) civil rights conspiracy (Counts I and X);

(2) a challenge to his conditions of confinement (Count II); (3) a claim of unlawful seizure (Court III); (4) his alleged retaliatory placement in the SHU (Count V); (5) a due process violation (Count VI); (6) violations of the Equal Protection Clause (Counts VII and XI); (7) an Eighth Amendment denial of adequate medical care (Count VIII); (8) fraud and fraudulent concealment (Count X); and (9) medical malpractice (Count XII). *See* Doc. 33, ¶ 54; Doc. 1, Compl.

The undisputed facts of the record reveal that Mr. Thomasson filed a total of four administrative remedies. (Doc. 33, ¶ 54.) The Court's review of the individual administrative remedies confirms that the only claim Mr. Thomasson properly exhausted within the BOP's administrative remedy program is his Eighth Amendment excessive use of force claim against Unit Manager Farley. (*Id*. ¶¶ 55-56, ¶ 58, and ¶ 60.) Since Mr. Thomasson failed to comply with the requirement to exhaust his administrative remedies, he is barred from bringing any claim against any other Defendant, other than his excessive use of force claim against Unit Manager Farley. Accordingly, the remaining Defendants are entitled to summary judgment in their favor as to all claims set forth in the Complaint against them.

### B. Excessive Force Claim Against Unit Manager Farley

Use of excessive force against an inmate violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989). "In determining whether a correctional officer has used excessive force in violation

of the Eighth Amendment, courts look to several factors, including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)).

When considering such claims, the reasonableness of a particular use of force is dependent upon context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396–7, 109 S.Ct. at 1872. The core inquiry on an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, ___, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)). This state-of-mind inquiry will reveal whether the force was applied wantonly, thus satisfying the subjective component of an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).

Here, Unit Manager Farley admits to using force against Mr. Thomasson. However, "[n]ot every push or shove, even if it may later seem unnecessary in the

-13-

peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Based on Mr. Thomasson's level of agitation, sudden aggressive movements, refusal to obey a direct order to sit down and his attempts to leave the DHO's office unescorted, Unit Manager Farley reasonably perceived him as a threat. The force used by Unit Manager Farley to maintain order and restore control over Mr. Thomasson was necessary and quickly established. The initial use of force, and increase in the amount of force, Unit Manager Farley used against Mr. Thomasson escalated in direct proportion to Mr. Thomasson's own unruliness and aggressive behavior towards staff. Only after Mr. Thomasson refused a direct order to stay seated was minimal force applied by Unit Manager placing his hands on Plaintiff's right shoulder. The physical force Unit Manager Farley mustered to place Mr. Thomasson on the ground and to restrain him until others arrived was applied as a last resort to restore control over Mr. Thompson's continued defiant efforts to ignore staff orders and leave the area unescorted. SHU inmates are not permitted to leave their cells, at any time, without staff escort. Unit Manager Farley reasonably perceived Mr. Thomasson's actions as a threat to the security of staff and inmates alike. The fact that Mr. Thomasson broke his ankle and received other injuries as a result of this use of force event does not elevate the incident to the level of an Eighth Amendment violation. The question of whether the force was excessive depends on the "extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

Upon review of the record, based on the foregoing facts, which are undisputed, and examination of the circumstances of this case under the appropriate facts, the Court finds that the force Unit Manager Farley used against Mr. Thomasson was "applied in a good-faith effort to maintain or restore discipline," and was not done "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999. There is ample evidence in the record from which a reasonable jury could conclude the use of force, and the amount of force, used by Unit Manager Farley was a reasonable and measured response to modify Mr. Thomasson's defiant behaviour and to control his movement within the SHU. Accordingly, there is no constitutional violation and summary judgment will be entered in favor of Unit Manager Farley on Plaintiff's excessive use of force claim.

An appropriate Order follows.[7]

                                                **/s/ A. Richard Caputo**
                                                **A. RICHARD CAPUTO**
                                                **United States District Judge**

**Date: March 27, 2013**

---

[7] Because Plaintiff has not exhausted his administrative remedies as to all but the excessive use of force claim against Unit Manager Farley, there is no need for this court to address Defendants' alternative bases for summary judgment as to the unexhausted claims.